UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Cheryl Moran,

    *Plaintiff,*

v.

Embark Card Services, LLC, Experian
Information Solutions, Inc., Equifax
Information Services, LLC, and Trans
Union, LLC

    *Defendants.*

No. 25 CV 6017

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Under the Federal Credit Reporting Act ("FCRA"), Cheryl Moran sued Embark Card Services, LLC ("Embark"), along with three credit reporting agencies: Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union") (collectively, "CRA Defendants"). The court previously dismissed Moran's claims against the CRA Defendants without prejudice. [Dkt. 48.] Moran filed an amended complaint, [Dkt. 49], and the CRA Defendants jointly move again to dismiss her claims against them for failure to state a claim. [Dkt. 52.] The motion is denied.

## I.    Background[1]

In September 2023, Moran opened an Embark Premier American Express credit card, which allowed her to earn cash-back rewards on qualifying purchases. [Dkt. 49, ¶¶ 17–18].

During the billing cycle that closed November 1, 2023, Moran made purchases totaling $1,933.20.[2] [Dkt. 49, ¶ 20; *see* Dkt. 52 at 20–24.] The November 2023 billing

---

[1]    The following factual allegations are taken from Moran's amended complaint [Dkt. 49] and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. See *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

[2]    The CRA Defendants attach to their motion brief Moran's billing statements from October 2023 until September 2024, the Embark Cardmember Agreement, and the Terms and Conditions for Embark's Cash Back Rewards program. [Dkt. 52 at 15–78.] Generally, a court "may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion."

statement set November 26, 2023 as Moran's payment due date and explained that Embark will credit a cardholder's account "as of the business day" it receives payment. [Dkt. 52 at 20–21.] Moran initiated payment of her balance in full on the due date. [Dkt. 49, ¶ 20.] However, because that fell on a Sunday, the payment was not transacted until the following day, and it was not posted until November 28, 2023. [*Id.*, ¶ 21; *see* Dkt. 52 at 27.]

On her next billing statement, for the cycle that closed on December 1, 2023, Moran's balance was $1,619.80. [Dkt. 52 at 25–28.] This included $1,533 in purchases, as well as a $29.00 late fee and $57.80 in interest. [Dkt. 49, ¶ 22; Dkt. 52 at 27.]

Moran alleges that she contacted Embark "about the late fee and interest charges, which Embark agreed to credit back to her." [Dkt. 49, ¶ 23.] Embark refunded the late fee and interest charge back to her on December 8 and 11, 2023, respectively. [Dkt. 49, ¶¶ 23–25; Dkt. 52 at 31.] These credits appear on Moran's January 2024 statement with the following notations: "LATE FEE REVERSAL," "INTEREST REVERSAL AUTO ACROSS CYCLES," and "INTEREST REVERSAL ACROSS CYCLES." [Dkt. 52 at 31.] Moran applied $51.99 in cash-back rewards toward her balance on December 5, 2023, then timely paid the remaining $1,480.90 on December 26, 2023. [*Id.*] Moran made no additional purchases in December 2023 and stopped using the card altogether. [Dkt. 49, ¶¶ 25–26; *see id.*] She therefore asserts that as of the January 1, 2024 closing date, her card should have had no balance.

Instead, Moran's balance on her next billing statement was $22.47 described as an "INTEREST CHARGE" assessed on the closing date, January 1, 2024. [Dkt. 49, ¶ 24; Dkt. 52 at 31.] The January 2024 statement also reflected that Moran had $200 in cash-back rewards remaining. [Dkt. 52 at 32.] Over the following months, Embark entered additional late fees and interest charges. In August 2024, Embark charged off Moran's balance, which had grown to $225.94. [Dkt. 49, ¶ 27; Dkt. 52 at 61.]

Between August and December 2024, Moran filed disputes with Equifax, Experian, and Trans Union, who each forwarded the dispute and unspecified supporting documents to Embark for verification. [*Id.*, ¶¶ 31–37.] Embark reported back to CRA Defendants that the information was accurate and should remain unchanged on her credit reports. [*Id.*, ¶ 37]. In December 2024, Moran initiated a

---

*Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). However, Federal Rule of Civil Procedure 10(c) permits a court to consider certain documents attached to briefs on a motion to dismiss. *Id.* Such documents "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (cleaned up). Because Moran refers to these statements and agreements in her amended complaint, *see* dkt. 49, ¶¶ 18–25, 30, and because they are central to her claims and their authenticity is not disputed, the court considers them.

second dispute process with Equifax and Experian. [*Id.*, ¶ 38–39.] Embark again reported back that the balance was accurate. [*Id.*, ¶ 40–43.]

Moran sued Embark under § 1681s-2(b) of the FCRA, for furnishing false information to the CRAs. [Dkt. 1; Dkt. 49.] She also sued Experian, Equifax, and Trans Union, alleging negligent and willful violations of §§ 1681e(b) and 1681i(a). [Dkt. 1; Dkt. 49.]

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. To survive a motion to dismiss under Rule 12(b)(6), "a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the court takes well-pleaded factual allegations as true, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    Analysis

Under both §§ 1681e(b) and 1681i(a) of the FCRA, a CRA's liability "depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 811 (7th Cir. 2023); see *Chuluunbat* v. *Experian Info. Sols., Inc.,* 4 F.4th 562, 567 (7th Cir. 2021) ("A threshold requirement for claims under both sections is that there must be an inaccuracy in the consumer's credit report."). While CRAs are obligated to investigate "factual inaccuracies," "legal inaccuracies" fall beyond what they are competent and required to investigate. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020).

Moran's initial complaint alleged that the CRAs reported inaccurate debt balances on her credit reports. She argued the reported amount owed should have been $25, not $225, because Embark "did not follow their own Terms and Conditions and failed to apply the Cash Back rewards to the remaining balance." [Dkt. 1 at ¶¶ 22–24.] But deciding whether Embark's terms and conditions *required* it to do so would have demanded legal interpretation of the underlying contract between Moran and Embark, which the CRAs were "neither qualified nor obligated" to do. *Denan*, 959 F.3d at 297. The complaint therefore failed to plead a factual inaccuracy, so the court granted the CRA Defendants' previous motion to dismiss. [*See* Dkt. 43.]

The amended complaint shifts its focus from the language of Embark's terms and conditions, *see* Dkt. 1, ¶¶ 19, 24, to the billing cycle that closed on January 1, 2024. Moran alleges that Embark reversed the interest charge and late fee it had imposed on the previous month's statement, that she paid her balance less those charges, and that she made no new purchases. "[B]ecause there should have been no balance for which to assess these fees," Moran insists, Embark incorrectly included an interest charge of $22.47 on the January 1, 2024 statement. [Dkt. 49, ¶¶ 24, 30.]

According to Moran, "[h]ad Experian, Transunion, and Equifax performed some simple arithmetic, they all should have seen there was *no basis* for the $22.47 interest charge in January 2024" and they would have reported a $0.00 balance." [Dkt. 55 at 4 (emphasis in original).]

Factual inaccuracies can be verified without requiring legal interpretation. See *Chuluunbat*, 4 F.4th at 568 (listing as examples "the amount a consumer owes, and what day a consumer opened an account or incurred a payment"). Legal inaccuracies, on the other hand, require legal interpretation or adjudication. See, e.g., *Denan*, 959 F.3d at 295 (whether a debt is legally valid); *Grenadyor v. Discovery Fin. Servs.*, No. 1:23-CV-01198, 2024 WL 1254572, at *3 (N.D. Ill. Mar. 25, 2024) (same); *Thornton v. Experian Info. Sols., Inc.*, No. 24 CV 624, 2025 WL 1951743, at *3 (N.D. Ill. July 16, 2025) (whether a contract was void, whether the plaintiff's parent could make him jointly liable for an account, and whether the contract was ratified when the plaintiff reached the age of majority).

The "paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Chuluunbat,* 4 F.4th at 567. By contrast, examples of factual inaccuracies "include the amount a consumer owes, and what day a consumer opened an account or incurred a payment" because these kinds of questions "do not require the consumer reporting agencies to make any legal determinations about the facts or legal judgments." *Id.* at 568. "Sometimes, when a consumer claims a debt is not owed, that presents a factual question." *Id.* at 569.

That appears to be the case here. Moran disputes whether the $22.47 in interest that appeared on her January 1, 2024 statement was, in fact, owed. Moran's December 1, 2023 statement reflected $1,533 in purchases, a $29.00 late fee and $57.80 in interest, for a total balance of $1,619.80. [Dkt. 52 at 25–28.] Moran then "contacted Embark about the late fee and interest charges, which Embark agreed to credit back to her." [Dkt. 49, ¶ 23.] The January 1, 2024 statement reflected "payments and credits" of $1,532.89, a credit for the $29.00 late fee, and another $57.91 in credits for interest charged, for a total of $1,619.80 in payments and credits, but also listed $22.47 in interest charges. [Dkt. 55 at 31.] This, Moran says, was factually incorrect—"there should not have been any additional late fees or interest charges" in January following her discussion with Embark. [Dkt. 55 at 4; Dkt. 49, ¶ 24 ("While the account was paid in full with the improper charges refunded, there was still an incorrect interest charge of $22.47 displaying even though she paid the account in full by the due date of December 26, 2023.")] Over the following months, the additional late fees and interest charges ballooned to $225, which Embark eventually charged off.

The CRA Defendants note that "[t]he fact that Embark refunded some of the late fees and interest does not prove that Plaintiff's payment was on time," and that they were neither "in a position to assess Embark's reason for making these credits,

nor … required to determine the motivations of a furnisher." [Dkt. 56 at 5.] This is a fair point. But Moran's allegation—that her debt balance was incorrect because Embark had agreed to credit those charges back to her as reflected on the billing statements—does not require any analysis of whether she had been late, or about Embark's motivations at all. [*See* Dkt. 49, ¶ 23.] Unlike the arguments raised in connection with the first motion to dismiss, *see* dkt. 1, ¶ 24; dkt. 56 at 3—which would have required at least some legal interpretation of how to apply the cash-back balance under the cardholder agreement—answering whether Embark agreed to credit the earlier charges back to Moran appears untethered to the contract. *Chuluunbat v. Cavalry Portfolio Servs., LLC*, 2020 WL 4208106, at *3 (N.D. Ill. July 22, 2020), *aff'd sub nom. Chuluunbat*, 4 F.4th 562 (explaining that CRAs are not competent to assess inaccuracies relating to "mixed question[s] of law and fact").]

Though a close call, the court errs on the side of allowing the claims to proceed. Moran has alleged just enough to make it plausible that the CRAs acted unlawfully by reporting factually inaccurate information under § 1681e(b). At this stage, when the court must accept Moran's allegations as true and view the facts in a light most favorable to her, it is a reasonable inference that the CRAs reported a balance due when Moran in fact owed nothing.

Likewise, § 1681i requires the CRAs to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." § 1681i(a)(1)(A). Here, Moran alleges that the CRAs alleged failure to "conduct reasonable reinvestigations and delete inaccurate information from the credit file [] after receiving actual notice of such inaccuracies and conducting reinvestigations." [Dkt. 49, ¶¶ 135, 167, 199.] Taking as true Moran's allegation that Embark agreed to a refund as reflected on the billing statements, the court cannot say at the dismissal stage that "no reinvestigation" by the CRAs "could have uncovered an inaccuracy" in Moran's credit report. *Denan*, 959 F.3d at 297.

## IV.    Conclusion

Because Moran has stated a claim against the CRAs under both §§ 1681e(b) and 1681i(a), the motion to dismiss is denied.

Enter: 25-cv-6017
Date:   December 17, 2025

_____
Lindsay C. Jenkins